**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kurt FISCHER, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 2, 1998.

Filed Dec. 7, 1998.

---

Michael M. Mustokoff, Huntington Valley, for appellant.

Before DEL SOLE, SCHILLER and BECK, JJ.

BECK, J.:

This case prompts our consideration of the law with respect to forcible compulsion and consent in sexual assault cases. After a careful review of the record and an in-depth analysis of the issue at hand, we affirm.

Appellant, an eighteen year-old college freshman, was charged with involuntary deviate sexual intercourse (IDSI), aggravated in-decent assault and related offenses in connection with an incident that occurred in a Lafayette College campus dormitory. The victim was another freshman student appellant met at school.

At trial, both the victim and appellant testified that a couple of hours prior to the incident at issue, the two went to appellant's dorm room and engaged in intimate contact. The victim testified that the couple's conduct was limited to kissing and fondling. Appellant, on the other hand, testified that during this initial encounter, he and the victim engaged in "rough sex" which culminated in the victim performing fellatio on him. According to appellant, the victim acted aggressively at this first rendezvous by holding appellant's arms above his head, biting his chest, stating "You know you want me," and initiating oral sex.

After the encounter, the students separated and went to the dining hall with their respective friends. They met up again later and once more found themselves in appellant's dorm room. While their accounts of what occurred at the first meeting contained significant differences, their versions of events at the second meeting were grossly divergent. The victim testified that appellant locked the door, pushed her onto the bed, straddled her, held her wrists above her head and forced his penis into her mouth. She struggled with appellant throughout the entire encounter and warned him that "someone would look for her" and "someone would find out." She also told him that she was scheduled to be at a mandatory seminar and repeatedly stated that she did not want to engage in sex, but her pleas went unheeded.

According to the victim, appellant forced his hands inside a hole in her jeans and penetrated her with his fingers. He then placed his penis inside the torn jeans, removed it and ejaculated on her face, hair and sweater. Thereafter, he turned her over onto her stomach, pulled down her underpants and attempted to penetrate her anally. Throughout the incident, appellant made various statements to the victim, including "I know you want it," "I know you want my dick in your mouth" and "Nobody will know

where you are." When the victim attempted to leave, appellant blocked her path. Only after striking him in the groin with her knee was the victim able to escape.

Appellant characterized the second meeting in a far different light. He stated that as he led the victim into his room, she told him it would have to be "a quick one." As a result, appellant figured that their sexual liaison would be brief. Thereafter, according to appellant, he began to engage in the same type of behavior the victim had exhibited in their previous encounter. Appellant admitted that he held the young woman's arms above her head, straddled her and placed his penis at her mouth. He testified that at that point he told her "I know you want my dick in your mouth." When she replied "no," appellant answered "No means yes." After another verbal exchange that included the victim's statement that she had to leave, appellant again insisted that "she wanted it." This time she answered "No, I honestly don't." Upon hearing this, appellant no longer sought to engage in oral sex and removed himself from her body. However, as the two lay side by side on the bed, they continued to kiss and fondle one another.

Appellant admitted to touching the victim's genitalia and to placing his penis inside the hole in her jeans. According to appellant, the victim enjoyed the contact and responded positively to his actions. At some point, however, she stood up and informed appellant that she had to leave. When appellant again attempted to touch her, this time on the thigh, she told him she was "getting pissed." Before appellant could "rearrange himself," so that he could walk the victim to her class, she abruptly left the room.

At trial, both sides presented evidence to support their positions. Appellant's college friends testified that after the first encounter, but before the second, appellant showed them bite marks on his chest that he had received from the victim during the first encounter. Numerous character witnesses testified on appellant's behalf.

The Commonwealth offered physical evidence of sperm found on the victim's sweat-er. Medical personnel testified to treating the victim on the night in question. Many of the victim's friends and classmates described her as nervous, shaken and upset after the incident.

Defense counsel argued throughout the trial and in closing that appellant, relying on his previous encounter with the victim, did not believe his actions were taken without her consent. Presenting appellant as sexually inexperienced, counsel argued that his client believed the victim was a willing participant during their intimate encounters. In light of his limited experience and the victim's initially aggressive behavior, argued counsel, appellant's beliefs were reasonable. Further, the victim's conduct throughout the second encounter, as testified to by appellant, would not make appellant's actions "forcible" since it appeared that the victim was enjoying the encounter. Finally, as soon as appellant realized that the victim truly did not wish to engage in oral sex a second time, appellant stopped seeking same. As a result, appellant's actions could not be deemed forcible compulsion.

The jury returned a verdict of guilty on virtually all counts.[1] Appellant was sentenced to two to five years in prison. On direct appeal, he retained new counsel who has raised a single issue of ineffectiveness before this court. He argues that trial counsel provided ineffective assistance in failing to request a jury charge on the defense of mistake of fact. Specifically, appellant claims that counsel should have asked the court to instruct the jurors that if they found appellant reasonably, though mistakenly, believed that the victim was consenting to his sexual advances, they could find him not guilty.

▆▆▆ The standard of review for ineffectiveness challenges is clear. Appellant must establish: 1) an underlying issue of arguable merit; 2) the absence of a reasonable strategy on the part of counsel in acting or failing to act; and 3) prejudice as a result of counsel's action or inaction. *Commonwealth v. Johnson*, 527 Pa. 118, 588 A.2d 1303, 1305 (1991). In all instances we presume that

1. Appellant was acquitted of criminal attempt.

counsel is effective and place the burden on appellant to prove otherwise. *Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75, 81 (1990).

Our initial inquiry is whether counsel would have been successful had he requested a mistake of fact instruction. Counsel cannot be deemed ineffective for failing to pursue a baseless claim. *Commonwealth v. Rollins*, 525 Pa. 335, 580 A.2d 744 (1990). Further, the quality of counsel's stewardship is based on the state of the law as it existed at time of trial; counsel is not ineffective if he fails to predict future developments or changes in the law. *Commonwealth v. Todaro*, 549 Pa. 545, 701 A.2d 1343, 1346 (1997).

The Commonwealth relies on two bases for dispensing with appellant's claims. It first argues that appellant's claim does not warrant consideration because he testified that the victim did not perform oral sex on him at the second encounter. The Commonwealth insists that appellant's testimony prevents him from claiming a mistake of fact regarding commission of the crime. The record, however, establishes otherwise. Throughout the trial, counsel clearly relied on appellant's previous contact with the victim to support his claim that appellant reasonably believed the victim consented to his advances. While on the stand, appellant admitted that he placed his penis on the victim's mouth. He testified: "the head of my penis went halfway in, but then she closed her mouth and turned to the side." Because the crime of IDSI is complete at the point of "penetration, however slight," appellant clearly admitted that the physical element/requirement of the crime was met. 18 Pa.C.S.A. § 3101. The Commonwealth's first argument, therefore, is unavailing.

The Commonwealth's second line of attack is its reliance on an opinion by a panel of this court. *Commonwealth v. Williams*, 294 Pa.Super. 93, 439 A.2d 765 (Pa.Super.1982), concerned the rape and assault of a Temple University student. The facts established that the victim accepted a ride from the appellant on a snowy evening in Philadelphia. Instead of taking the young woman to the bus station, appellant drove her to a dark area, threatened to kill her and informed her that he wanted sex. The victim told Williams to "go ahead" because she did not wish to be hurt.

After his conviction and sentence, appellant filed a direct appeal and argued, among other things, that the trial court erred in refusing to instruct the jury "that if the defendant reasonably believed that the prosecutrix had consented to his sexual advances that this would constitute a defense to the rape and involuntary deviate sexual intercourse charge." *Id.* 439 A.2d at 767. This court rejected Williams's claim and held:

> In so refusing the proffered charge the court acted correctly. The charge requested by the defendant is not now and has never been the law of Pennsylvania. When one individual uses force or the threat of force to have sexual relations with a person not his spouse and without the person's consent he has committed the crime of rape. *If the element of the defendant's belief as to the victim's state of mind is to be established as a defense to the crime of rape then it should be done by our legislature which has the power to define crimes and offenses. We refuse to create such a defense.*

*Id.* (*emphasis supplied.*) The Commonwealth insists that under *Williams*, appellant was not entitled to the instruction he now claims trial counsel should have requested.

In response, appellant makes two arguments. First, he argues that the "stranger rape" facts of *Williams* were far different from those of this case, making the case inapplicable. Second, he maintains that the law with respect to rape and sexual assault has changed significantly over the last decade, along with our understanding of the crime and its permutations, making a mistake of fact instruction in a date rape case a necessity for a fair trial.

In support of his argument, appellant draws our attention to many sources, including the evolution of sexual assault case law in this Commonwealth, recent amendments to our sexual offenses statutes, commentary accompanying the Pennsylvania Standard Jury Instructions, law review articles and treatment of the issue in other jurisdictions. Be-

cause we find appellant's arguments thoughtful and compelling, we will address them here.

The issues of consent and forcible compulsion raised in sexual assault prosecutions have always been complex. Unless the incident is witnessed by a third party, or is accompanied by conspicuous injury, a rape case is often reduced to a credibility battle between the complainant and the defendant. Our laws have sought continually to protect victims of sexual assault, and in the process, have undergone significant change. Although the rape and IDSI laws have always required the element of "forcible compulsion," that term was not initially defined. The definition of that term and its relation to the concept of consent have been the frequent topic of discussion among lawmakers, courts and scholars.[2]

Not long after *Williams* was decided, our supreme court published *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). In that case, a twenty-year-old man was accused of raping an eight-year-old girl. The evidence established that the appellant took the victim, whom he knew, to an abandoned building and sexually assaulted her. The child complied with all of the appellant's instructions until she felt pain, whereupon she asked him to stop. Medical tests showed the presence of semen in the child's vaginal and rectal areas, as well as a "rectovaginal fissure (tear)." A panel of this court reversed Rhodes's rape conviction based on insufficient evidence. The panel held that while the crime of statutory rape clearly was established given the victim's age, there was no evidence of the forcible compulsion necessary for the rape conviction.

Our supreme court disagreed. Noting that sexual assault crimes present "perplexing, controversial and emotionally charged problems for the criminal justice system," the court borrowed the language of *Williams*

and stated that "the degree of force required to constitute rape [or IDSI] is relative and depends upon the facts and particular circumstances of the case." *Id.* at 554–56, 510 A.2d at 1226. Defining forcible compulsion as including "not only physical force or violence but also moral, psychological or intellectual force," the court held that forcible compulsion was established.

> There is an element of forcible compulsion, or threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id.* at 556–58, 510 A.2d at 1227.

The *Rhodes* court's inclusion of types of forcible compulsion other than physical was a significant change in the law. Of course, defining those new types was not an easy task. In *Commonwealth v. Mlinarich*, 518 Pa. 247, 542 A.2d 1335 (1988), our supreme court again faced the issue of what constitutes forcible compulsion necessary for a rape conviction. In that case, the appellant was charged with raping a fourteen-year-old girl, his former neighbor who had been released to his wife's custody. The child was no longer living with her parents because she was involved in a theft and had spent a period of time in a juvenile detention center. When the appellant instructed the girl to disrobe, she refused. He responded by

---

**2.** It is clear from a reading of the relevant statutes and accompanying case law that the rape and IDSI statutes rely on the same definitions. *See generally* 18 Pa.C.S.A §§ 3101; 3121; 3123. *See also Commonwealth v. Smolko*, 446 Pa.Super. 156, 666 A.2d 672 (Pa.Super.1995) (forcible compulsion for rape and IDSI is identical); *Commonwealth v. Poindexter*, 435 Pa.Super. 509, 646

A.2d 1211 (Pa.Super.1994) (IDSI addresses forcible acts of anal and oral intercourse), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1995). Therefore, despite the fact that this is an IDSI case, our discussion of rape laws and cases involving rape convictions is relevant to and probative of the issue before us.

threatening to send her back to the detention home if she did not comply. The victim acquiesced and on several occasions thereafter, the appellant engaged in vaginal and oral intercourse with her.

After convictions on counts of rape, IDSI, assault and related charges, the appellant came before this court. The *en banc* court ultimately ruled, in a five to four majority, that the rape and attempted rape charges must be reversed for lack of proof of forcible compulsion.

Upon review, the supreme court was evenly divided and so the reversal by this court was sustained. The supreme court's opinion in support of affirmance recognized that physical violence was not the only manner in which forcible compulsion could be accomplished, however it also stated that "forcible compulsion was [not] intended by the General Assembly, in this context, to be extended to embrace appeals to the intellect or the morals of the victim." *Id.* at 252–53, 542 A.2d at 1338. The court reasoned:

> Certainly psychological coercion can be applied with such intensity that it may overpower the will to resist as effectively as physical force. *See e.g., Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986). The purpose of the term was to distinguish between assault upon the will and the forcing of the victim to make a choice regardless how repugnant. Certainly difficult choices have a coercive effect but the result is the product of the reason, albeit unpleasant and reluctantly made. The fact cannot be escaped that the victim has made the choice and the act is not involuntary.

*Id.* at 260–62, 542 A.2d at 1342.

In his opinion in support of reversal, Justice Larsen opined that under *Rhodes*, the element of forcible compulsion was met. He further implored the legislature to correct what he characterized as a "misreading of its intention." *Id.* at 273–75, 542 A.2d at 1349.

A correction by the legislature did not occur immediately after *Mlinarich* or even shortly thereafter. Indeed, it was not until the supreme court's decision in *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994), that the legislature amended the law with respect to sexual assaults.[3] *Berkowitz*, like the case before us, involved an incident between two young college students in a dormitory room. The complainant testified that she entered the appellant's room hoping to find his roommate. She stayed in the room at the appellant's request. At some point, the appellant moved toward the complainant, touched her breasts and attempted to put his penis in her mouth. He then removed her pants and undergarments and penetrated her vagina with his penis. Throughout the encounter, the complainant repeatedly told the appellant "no," but she made no attempt to leave even though she could have done so as the appellant was not restraining her in any manner.

Our supreme court considered the facts set out above and concluded that the element of forcible compulsion was not established. While recognizing that the complainant said "no" throughout the incident, the court stated that the legislature intended the term forcible compulsion to mean "something more than a lack of consent." *Id.* at 150–51, 641 A.2d at 1165. Berkowitz's rape conviction was reversed.

Less than one year after the *Berkowitz* decision, the legislature amended the sexual assault law by adding a definition for forcible compulsion. The language of the amendment closely followed that used by the *Rhodes* court:

> **"Forcible Compulsion."** Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to, compulsion resulting in another person's death, whether the death oc-

---

3. *Apparently, calls to "overhaul" sexual assault laws came before* Berkowitz *was handed down, but the actual amendments were not enacted until after the decision was published. The case itself was a focal point in several legislative dis-* cussions. *Theresa A. McNamara,* Act 10: Remedying Problems of Pennsylvania's Rape Laws or Revisiting Them?, *10 Dick.L.Rev. 203, 210–14 (1996).*

curred before, during or after sexual intercourse.

18 Pa.C.S.A. § 3101.

It is this broader definition, argues appellant in this case, that prompts the necessity for a mistake of fact jury instruction in cases where such a defense is raised. According to appellant:

> The language of the present statute inextricably links the issues of consent with *mens rea*. To ask a jury to consider whether the defendant used "intellectual or moral" force, while denying the instruction as to how to consider the defendant's mental state at the time of alleged encounter is patently unfair to the accused.

Appellant's Brief at 24.

Appellant's argument is bolstered by the fact that the concept of "mistake of fact" has long been a fixture in the criminal law. The concept is codified in Pennsylvania and provides:

> Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:
>
> (1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense; or
>
> (2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense

18 Pa.C.S.A. § 304.

The notion that one charged with sexual assault may defend by claiming a reasonable belief of consent has been recognized in other jurisdictions. The New Jersey Supreme Court has stated:

> If there is evidence to suggest that the defendant reasonably believed that ... permission had been given, the State must demonstrate either that the defendant did not actually believe that affirmative permission had been freely-given or that such belief was unreasonable under all of the circumstances.

*In the Interest of M.T.S.*, 129 N.J. 422, 609 A.2d 1266, 1279 (N.J.1992).

Courts in other jurisdictions have likewise held that jury instructions regarding the defendant's reasonable belief as to consent are proper. *See State v. Smith*, 210 Conn. 132, 554 A.2d 713 (Conn.1989) ("We agree with the California courts that a defendant is entitled to a jury instruction that a defendant may not be convicted of this crime if the words or conduct of the complainant under all the circumstances would justify a reasonable belief that she had consented.") *See also People v. Mayberry*, 15 Cal.3d 143, 125 Cal.Rptr. 745, 542 P.2d 1337 (Cal.1975).

Although the logic of these other cases is persuasive, we are unable to adopt the principles enunciated in them because of the binding precedent with which we are faced, namely, *Williams*. In an effort to avoid application of *Williams*, appellant directs our attention to the Subcommittee Notes of the Pennsylvania Criminal Suggested Standard Jury Instructions. The possible conflict between *Williams* and § 304 (Mistake of Fact) was not lost on the Subcommittee.

> Quaere whether *Williams* is wholly consistent with Crimes Code §§ 302(c) and 304(1). In the Subcommittee's opinion, the courts should recognize as a defense a defendant's non-recklessly held, mistaken belief regarding consent. The jury ought to be told in what circumstances a mistaken belief may preclude a defendant's forceful conduct from being forcible compulsion or threat of forcible compulsion.

Subcommittee Note, Pa. Suggested Standard Crim. Jury Instructions at 15.3121A.

Appellant's insistence that *Williams* should be disregarded in light of the legislature's broader and more complex definition of forcible compulsion is echoed by the Subcommittee:

> In the opinion of the Subcommittee there may be cases, especially now that *Rhodes* has extended the definition of force to psychological, moral and intellectual force, where a defendant might non-recklessly or even reasonably, but wrongly, believe that his words and conduct do not constitute force or the threat of force and that a non-resisting female is consenting. An example might be "date rape" resulting from mutual misunderstanding. The boy does

not intend or suspect the intimidating potential of his vigorous wooing. The girl, misjudging the boys' character, believes he will become violent if thwarted; she feigns willingness, even some pleasure. In our opinion the defendant in such a case ought not to be convicted of rape.

*Id.*

It is clear that the Subcommittee gave extensive thought to the ever-changing law of sexual assault and our understanding of sexual behavior in modern times. We agree with the Subcommittee that the rule in *Williams* is inappropriate in the type of date rape case described above. Changing codes of sexual conduct, particularly those exhibited on college campuses, may require that we give greater weight to what is occurring beneath the overt actions of young men and women. Recognition of those changes, in the form of specified jury instructions, strikes us an appropriate course of action.

■ Despite appellant's excellent presentation of the issues, there remain two distinct problems precluding relief in this case. First is appellant's reliance on the evolution of our sexual assault laws to avoid the application of *Williams*. As is obvious from our discussion above, the changes in the statute are significant and have served to extend culpability in rape and IDSI cases to a variety of new circumstances, including incidents involving psychological, moral and intellectual force.

This case, however, is not one of the "new" varieties of sexual assault contemplated by the amended statute. It does not involve the failure to resist due to a tender age, as in *Rhodes*, or the threat of punishment for failure to comply, as in *Mlinarich*. Nor is it a situation where the complainant admits she offered no resistance and the evidence shows that nothing prevented her escape, as in *Berkowitz*. This is a case of a young woman alleging physical force in a sexual assault and a young man claiming that he reasonably

believed he had consent.[4] In such circumstances, *Williams* controls.

We are keenly aware of the differences between *Williams* and this case. Most notable is the fact that Williams and his victim never met before the incident in question. Here, appellant and the victim not only knew one another, but had engaged in intimate contact just hours before the incident in question.[5] It is clear however, that the *Williams* court's basis for denying the jury instruction was its conclusion that the law did not require it and, further, that the judiciary had no authority to grant it. Even if we were to disagree with those conclusions, we are powerless to alter them.

In any event, distinguishing *Williams* on the basis of the parties' previous contacts, and therefore holding that it should not apply here, is not enough to allow appellant the relief he seeks. Even if we decide that we are persuaded by appellant's arguments chronicling the history of sexual assault law and the Jury Instructions Subcommittee's views, we face a second barrier. Because this appeal raises ineffective assistance of counsel, we are required to find that appellant's trial lawyer made a mistake. That mistake is the failure to ask the trial court for an instruction that the *Williams* case held is unwarranted. In other words, we would have to find that counsel's failure to argue for a change in the law constituted ineffectiveness. This, of course, is not possible. We simply cannot announce a new rule of law and then find counsel ineffective for failing to predict same. *Todaro, supra.*

Assuming that we have the authority to declare that the instruction is one to which appellant *should be* entitled, we cannot hold that counsel erred in failing to demand it. The relief appellant seeks represents a significant departure from the current state of the law. Despite its compelling nature, it

---

4. We observe that the facts of this case are not the same as those set out in the Subcommittee's "date rape" scenario. The victim in this case testified that she was physically forced to engage in sex against her will, that she resisted verbally and physically and that she had to strike appellant in order to leave the room. Appellant characterized the victim as a sexually experienced

woman who initiated oral sex in the first encounter, declined it in the second and made a false rape claim thereafter.

5. The nature of that contact was disputed by the parties. It is, of course, the jury's task to resolve issues of credibility.

cannot be the basis for an ineffective assistance of counsel claim.

Judgment of sentence affirmed.

DEL SOLE, J., concurs in the result.