J-A16025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HENRY HAM | : | |
| | : | |
| Appellant | : | No. 1437 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000732-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| HENRY HAM | : | |
| | : | |
| Appellant | : | No. 1438 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 16, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002072-2021

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED SEPTEMBER 12, 2025**

Henry Ham appeals from the judgments of sentence entered in two cases, for an aggregate of 15 to 30 years of incarceration. In case 1437 EDA 2024, Ham was convicted of rape, violating the Uniform Firearms Act, and possessing an instrument of crime.[1] In case 1438 EDA 2024, Ham was

_____

[1] 18 Pa.C.S. §§ 3121(a)(1), 6105(a)(1), and 907(a), respectively.

convicted of involuntary deviate sexual intercourse and aggravated assault.[2] Ham presents five challenges to the sufficiency of the evidence to sustain his convictions. We affirm.

The charges against Ham arose from two incidents, in 2011 and 2016, when women reported sexual assault to the police and underwent forensic examinations. Years later, police matched Ham's DNA to samples collected in the examinations. Ham was charged in separate bills of information, which were consolidated for a jury/bench trial beginning on November 17, 2022. The first victim, E.M., testified about the 2011 incident:

> On September 11, 2011, E.M. was working as a sex worker when Mr. Ham approached her in a car. E.M. recognized Mr. Ham as someone who frequented her area of work, but she did not know his name, nor had she ever interacted with him before. Mr. Ham offered E.M. sixty dollars in exchange for sex to which she agreed. E.M. then entered Mr. Ham's car.
>
> The encounter turned violent and non-consensual as Mr. Ham proceeded to attack and rape E.M. at gunpoint. Specifically, Mr. Ham pulled out a black handgun and threatened E.M. with it. Mr. Ham told E.M. to give him his money back. He then pistol-whipped E.M. in the face and raped her. Although Mr. Ham had difficulty achieving and maintaining an erection, Mr. Ham's penis touched E.M.'s vagina and crossed the plane of E.M.'s labia. Mr. Ham subsequently ejaculated on E.M.
>
> E.M. managed to escape from the car and run away. She then called a driver who took her directly to a police station where she reported the incident. After taking E.M.'s statement, a patrol officer transported E.M. to the Special Victims Unit (SVU) where a nurse examined her and administered a rape kit examination.

Trial Court Opinion, 10/2/24, at 2–3 (record citations omitted).

_____

[2] 18 Pa.C.S. §§ 3123(a)(1) and 2702(a), respectively.

The second victim, S.H., testified about the 2016 incident:

In the early morning hours of June 5, 2016, S.H. was walking alone having just left a nearby after-hours club. She originally arrived with her boyfriend, but after an argument between the two, she attempted to make her way home by herself. Mr. Ham saw S.H. crying and began conversing with her. S.H.'s cell phone was dead, so she attempted to call a cab on Mr. Ham's cell phone but received a constant busy signal. Mr. Ham offered to drive her home if she agreed to give him money for a ride. She agreed and entered Mr. Ham's car.

As they neared S.H.'s home, Mr. Ham parked his car a block past the turn he should have made and asked S.H. if she wanted to have sex with him; she laughed and said "no." At this Mr. Ham became violent. He began strangling S.H. and forcibly restrained her; he put his arm over her throat and held her arms down. Mr. Ham then positioned himself on top of S.H. and licked her vagina.

S.H. was screaming and kicking Mr. Ham. Mr. Ham then punched S.H. in the face and stomach and ribs repeatedly. Mr. Ham also smothered S.H. by shoving multiple rags into her mouth and trying to force a plastic bag over her head. The rags impacted S.H.'s ability to breathe. S.H. grabbed the plastic bag and was able to remove the rags from her mouth, throwing them out of the car window.

S.H. managed to jump out of the car. She only made it a few feet before Mr. Ham caught up to her and began dragging her back to the car by her hair. As he was dragging S.H., Mr. Ham told her that he had a gun and was going to kill her. Hearing S.H.'s screams, a male bystander ran toward her, upon which Mr. Ham got back into the car and drove away.

The bystander walked S.H. to a nearby police officer. The officer then walked S.H. back to the scene of the attack and collected the rags. The officer took S.H. to the SVU where [S.H.] provided a report of the incident and was examined by a nurse who administered a rape kit examination.

*Id.* at 3–4 (record citations and footnote omitted).

From the 2011 incident, the jury found Ham guilty of rape and possessing an instrument of crime, and the trial court found Ham guilty of

persons not to possess firearms. From the 2016 incident, the jury found Ham guilty of involuntary deviate sexual intercourse and aggravated assault.

On June 16, 2023, the trial court sentenced Ham to an aggregate term of 15 to 30 years of confinement. Ham filed post-sentence motions, which the trial court denied. Ham appealed *nunc pro tunc*. Ham and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Ham presents five challenges to the sufficiency of the evidence to sustain his convictions. He claims that for the offense of:

> Rape . . . the material element of forcible compulsion, or threat of forcible compulsion, was not proven beyond a reasonable doubt;
>
> Rape . . . sexual intercourse was not proven beyond a reasonable doubt;
>
> Persons not to possess firearms . . . possession of an actual firearm was not proven beyond a reasonable doubt;
>
> Involuntary deviate sexual intercourse . . . forcible compulsion, or threat of forcible compulsion, was not proven beyond a reasonable doubt;
>
> Aggravated assault . . . causing the complainant to suffer serious bodily injury, or attempting to cause the complainant to suffer serious bodily injury, was not proven beyond a reasonable doubt.

*See* Ham's Brief at 4–5.

A challenge to evidentiary sufficiency "is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Beauchamps***, 320 A.3d 717, 721 (Pa. Super. 2024) (citing ***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015)). On review of a sufficiency challenge:

We assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. We must determine whether there is sufficient evidence to enable the fact-finder to have found every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.

*Id.* (quoting *Commonwealth v. Wallace*, 244 A.3d 1261, 1273–74 (Pa. Super. 2021)) (brackets omitted).

In his first issue, Ham challenges the evidence to prove that he used "forcible compulsion" (or threat thereof) in his 2011 encounter with E.M., for which he was convicted of rape. He notes that E.M., who was working as a prostitute, agreed to have sexual intercourse with him for money. Because the incident was "completely consensual," Ham contends the Commonwealth did not prove the element of forcible compulsion (or threat thereof).

Under the Crimes Code, a person commits rape when he "engages in sexual intercourse with a complainant" under certain conditions, including engaging in sexual intercourse "By forcible compulsion" or "By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution." 18 Pa.C.S. § 3121(a)(1), (2). "Forcible compulsion" is

- 5 -

"Compulsion by use of intellectual, moral, emotional, or psychological force, either express or implied." 18 Pa.C.S. § 3101. The term denotes "'something more' than mere lack of consent." *Commonwealth v. Gonzalez*, 109 A.3d 711, 721 (Pa. Super. 2015) (citing *Commonwealth v. Smolko*, 666 A.2d 672, 676 (Pa. Super. 1995)). Whether a defendant exercised forcible compulsion depends on the totality of the circumstances, including this non-exclusive list of factors:

> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986). Using a gun to cause a person to submit to sexual intercourse is forcible compulsion. *Commonwealth v. Guess*, 404 A.2d 1330, 1335–36 (Pa. Super. 1979).

Here, the circumstances established at trial were sufficient for the jury to find that Ham forcibly compelled E.M. to submit to sexual intercourse with him against her will. Although E.M. stated that her interaction with Ham began in the context of a prostitution transaction, she testified that Ham then hit her with a gun and threatened her "to give him his money back or he was going to take [her] pussy." N.T., 11/18/22, at 10. In response, E.M. "just did what he said," lying down while Ham's penis touched her pelvic area. *Id.* Striking and threatening a victim with a gun is "quite obviously" the use of forcible compulsion. *Guess*, 404 A.2d at 1336. The jury could credit E.M.'s testimony

about Ham's actions to find that E.M. no longer consented and that Ham used forcible compulsion to cause E.M. to submit to sexual intercourse against her will. The evidence was sufficient to establish forcible compulsion, and Ham's first issue fails.

Ham's second issue challenges another element of his rape conviction. He argues that the evidence did not establish that his penis penetrated E.M.'s vagina, and it was therefore insufficient to prove that he engaged in sexual intercourse.

"Sexual intercourse," by definition, requires "some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. Entrance into the labia satisfies this element, even without evidence of penetration further into the vagina. *Commonwealth v. Hunzer*, 868 A.2d 498, 505–06 (Pa. Super. 2005) (citing *Commonwealth v. Hawkins*, 614 A.2d 1198, 1200 n.1 (Pa. Super. 1992)).

Here, E.M. stated that Ham's penis did "not really" go in her vagina. N.T., 11/18/22, at 11. However, she specifically testified that Ham's penis crossed the plane of her labia. *Id.* The jury could therefore conclude that there was some penetration, however slight, and therefore that Ham's actions met the legal definition of sexual intercourse. Because the evidence was sufficient to prove this element of rape, Ham's second issue fails.

In his third issue, Ham challenges his conviction for persons not to possess firearms. He observes that no firearm was recovered after the 2011 incident, and he characterizes the only testimony that he possessed a firearm

as vague. Ham contends that the evidence did not establish that the handgun he possessed met the length requirements of the general definition of "firearm." Although the section-specific definition of "firearm" includes no length requirement, Ham argues that both definitions should be considered.

Identifying the operative definition of "firearm" requires us to interpret the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. §§ 6101–6128. Because statutory interpretation is a question of law, "our scope of review is plenary, and our standard of review is *de novo*." **Commonwealth v. James**, 297 A.3d 755, 764 (Pa. Super. 2023) (citing **Commonwealth v. Andrews**, 173 A.3d 1219, 1221 (Pa. Super. 2017)).

The Act, in its definitions section, provides that a "firearm" means "Any pistol or revolver with a barrel length less than 15 inches," or other guns with other length limits. 18 Pa.C.S. § 6102. The definitions section is "Subject to additional definitions contained in subsequent provisions of" the Act. **Id.**

Section 6105, which prohibits certain persons from possessing firearms, includes an additional definition of "firearm" without any length requirement:

> (i) Firearm.--As used in this section only, the term "firearm" shall include any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon.

18 Pa.C.S. § 6105(i).

A plurality of the Supreme Court of Pennsylvania held that, since the legislature enacted a section-specific definition of firearm, "barrel length is no longer an essential element of the offense under § 6105." **Commonwealth**

*v. Gillespie*, 821 A.2d 1221, 1225 (Pa. 2003) (Eakin, J., announcing the judgment of the court). Every justice who decided the case agreed. *See id.* at 1228 (Nigro, J., concurring and dissenting); *id.* at 1229 (Saylor, J., concurring and dissenting). Because a majority of the court agreed about the barrel-length issue, this holding is mandatory authority. *Commonwealth v. McClelland*, 233 A.3d 717, 733 (Pa. 2020). Section 6105 thus prohibits a person convicted of an enumerated offense from possessing a firearm, "regardless of whether . . . the barrel of the firearm [is] a certain length." *Commonwealth v. Brown*, 249 A.3d 1206, 1217 (Pa. Super. 2021) (quoting *Gillespie*, 821 A.2d at 1224).

Here, E.M. testified that Ham "pulled out a gun," threatened her, and "hit [her] with it." N.T., 11/18/22, at 9. She described the gun as a black handgun. *Id.* She recalled that Ham hit her in the face with the gun. *Id.* at 10. The trial court, crediting E.M.'s testimony, could find that Ham possessed a gun when he struck E.M. with it. Ham's third issue fails.

In his fourth issue, Ham claims that the evidence was insufficient to sustain his conviction for involuntary deviate sexual intercourse, from the 2016 incident. He argues that because S.H. said, "I told him that I would do it," the Commonwealth failed to prove the element of forcible compulsion or threat thereof. *See* N.T., 11/17/22, at 60–61.

Similar to the rape statute, section 3123 prohibits a person from engaging in deviate sexual intercourse "by forcible compulsion" or "by threat of forcible compulsion that would prevent resistance by a person of reasonable

resolution." 18 Pa.C.S. § 3123(a)(1), (2). "Deviate sexual intercourse" includes intercourse "per os," including licking a vagina. 18 Pa.C.S. § 3101; *see Commonwealth v. Westcott*, 523 A.2d 1140, 1145–47 (Pa. Super. 1987). Whether a defendant engaged in deviate sexual intercourse by forcible compulsion depends on the totality of the circumstances, including the same factors as above. *Commonwealth v. Fischer*, 721 A.2d 1111, 1115 n.2 (Pa. Super. 1998).

Here, S.H. testified that she declined Ham's request to have sex, and then Ham "clotheslined" her with his arm across her throat. N.T., 11/17/22, at 56–57. Then, Ham "proceeded to try to get on top of me and lick me, try to force himself on me." *Id.* at 57. S.H. described how Ham restrained her arms and punched her in the face and stomach. *Id.* at 59–60. After this attack, S.H. "got scared" and told Ham he could go ahead. *Id.* at 60–61. The jury could credit S.H.'s testimony that Ham forced himself on her, held her, and hit her, *i.e.*, that he used forcible compulsion to cause S.H. to submit to deviate sexual intercourse against her will. The evidence was thus sufficient, and Ham's fourth issue fails.

In his fifth issue, Ham challenges the sufficiency of the evidence to sustain his conviction for aggravated assault. He argues the Commonwealth failed to prove that he attempted to cause serious bodily injury to S.H.

As is relevant here, a person commits aggravated assault if he "attempts to cause serious bodily injury to another." *See* 18 Pa.C.S. § 2702(a)(1). Bodily injury is impairment of physical condition or pain; serious bodily injury

is "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

An attempt to cause serious bodily injury entails "some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Fortune*, 68 A.3d 980, 985 (Pa. Super. 2013) (quoting *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa. Super. 2012)). The Commonwealth may prove such an intent with direct or circumstantial evidence. *Id.* A jury can find a defendant intended to cause "the natural and probable consequences of his actions." *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008) (quoting *Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. 2006)).

Here, the trial court catalogued the ample evidence of Ham's violent actions against S.H.:

> Mr. Ham started to strangle S.H., and he forcibly restrained her. He repeatedly punched S.H. in the face, ribs, and stomach. He also smothered S.H. by shoving multiple rags into her mouth. The rags impacted S.H.'s ability to breathe. [Further], he tried to force a plastic bag over her head. After S.H. managed to jump out of the car, Mr. Ham caught up to her and began dragging her back to the car by her hair.

Trial Court Opinion, 10/2/24, at 14 (record citations omitted). S.H. recounted that Ham "told me he was going to kill me, he had a gun." N.T., 11/17/24, at 64. Ham only stopped dragging her and fled when a bystander heard S.H.'s screams and ran towards them. *Id.* at 65–66.

- 11 -

The jury could rely on S.H.'s testimony to find that Ham attempted to cause serious bodily injury. It is reasonable to infer that Ham intended the natural consequences of his actions—impeding S.H.'s breathing, striking her body, and dragging her by her hair. Additionally, S.H. provided direct evidence of Ham's intent with his statement that he was going to kill her and had a gun. Therefore, the evidence was sufficient to sustain Ham's conviction for aggravated assault, and Ham's fifth issue fails.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/12/2025