J-S36033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
ANDRAE D.D. COLE   :
  :
Appellant   :   No. 1223 EDA 2020

Appeal from the Judgment of Sentence Entered January 6, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002889-2019

BEFORE: LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:          **FILED APRIL 25, 2022**

Andrae D.D. Cole (Appellant) appeals from the judgments of sentence

of the Court of Common Pleas of Philadelphia County imposing an aggregate

term of 15 to 30 years of incarceration for rape by forcible compulsion,

involuntary deviate sexual intercourse ("IDSI") of a person less than 16 years

of age, aggravated indecent assault without consent, and related offenses.[1]

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(7), and 3125(a)(1), respectively. The
court also convicted Appellant of rape by threat of forcible compulsion, IDSI
by threat of forcible compulsion, aggravated indecent assault by forcible
compulsion, aggravated indecent assault by threat of forcible compulsion,
indecent assault without consent, indecent assault by forcible compulsion,
indecent assault by threat of forcible compulsion, indecent assault of a person
less than 16 years of age, sexual assault, unlawful contact with a minor,
corruption of minors, endangering the welfare of children, and terroristic
threats. 18 Pa.C.S. §§ 3121(a)(2), 3123(a)(2), 3125(a)(2), 3125(1)(3),
*(Footnote Continued Next Page)*

He raises challenges to the sufficiency of the evidence and the legality and discretionary aspects of his sentence. Upon review, we affirm.

The facts out of which this case arises are described by the trial court as follows:

> On January [2], 201[9], I.C., f[if]teen years old at the time, reported to her school's counselor that Appellant, her cousin on her father's side, had been sexually abusing her for the last few years. The counselor promptly called the Philadelphia police and I.C. made a statement to a female detective in [the police department's Special Victims Unit] the same day. I.C. reported [that] the abuse started soon after her thirteenth (13th) birthday. Her older sister [T.M.] testified to the same.
>
> I.C. moved into a home shared by Appellant and other members of Appellant's family located at 1918 Dennie Street, Philadelphia, Pennsylvania. August 1st or 2nd of the same year was the first time Appellant raped I.C. I.C. and Appellant were alone in the house, sitting next to each other on the couch watching television, when Appellant bent I.C. over the couch and inserted his penis into her vagina. This abuse continued repeatedly and in different rooms of the 1918 Dennie [Street] home, for the next year.
>
> Appellant's sexual abuse of I.C. evolved from vaginal penetration to oral when she turned fourteen (14) years old. Appellant continued his manipulation of I.C. by telling her that he loved her and that he was close to her. I.C. "thought that's what people that love each other do [and] thought it was okay." Even if I.C. told Appellant that she did not want to do anything, "it still got done[."] Throughout the abuse, I.C. was scared to tell anyone since Appellant told her that she would "get into trouble, [and] it's going to be bad."
>
> The final rape took place on December 22, 2018[,] at Glenmore Avenue, Philadelphia, Pennsylvania, I.C.'s father's home.

_____

3126(a)(1), 3126(a)(2), 3126(a)(3), 3126(a)(8), 3124.1, 6318(a)(1), 6301(a)(1)(ii), 4304(a)(1), and 2706(a)(1), respectively. The court acquitted Appellant of recklessly endangering another person under 18 Pa.C.S. § 2705.

- 2 -

Appellant was home with I.C. and her brother's girlfriend. When her brother's girlfriend left to go to work, not five (5) minutes later, Appellant proceeded to vaginally penetrate I.C. yet again. This time, however, he attempted to penetrate her anus with his penis. I.C. told Appellant that "...I was, like, it hurt. Like, me, personally, yeah it hurts. Like, that's painful." Immediately after what I.C[.] calls "the nasties" happened, she had to take a warm bath because it hurt.

On December 23, 2018, I.C. was traveling to Virginia, with some of her siblings, to spend the Christmas holidays with members of her mother's family. It's on this bus ride that I.C.'s sister [T.M.] noticed something amiss and began to question I.C. I.C [f]inally opened up to her sister about the abuse.

Trial Court Opinion, 4/1/21, at 3-4 (notes of testimony citations omitted; parts cleaned up in brackets). Trial testimony referring to Appellant's date of birth permitted the inference that he was twenty-four to twenty-six years of age during the relevant events. N.T. Trial, 10/31/19, 110.

Appellant proceeded to a non-jury trial. The Commonwealth presented the testimony of I.C., her sister, and a police officer that interviewed I.C. Appellant presented testimony from his mother as a fact witness, and character evidence from his godmother's son. On October 31, 2019, the court found Appellant guilty of the above-referenced offenses.[2]

On January 6, 2020, the court imposed consecutive prison terms of 10 to 20 years for rape by forcible compulsion and 5 to 10 years for IDSI of a person less than 16 years of age, along with a concurrent prison term of 5 to

---

[2] The parties have not ensured the presence of any of the trial exhibits in the certified record for this appeal. N.T. Trial, 10/31/19, 114, 133 (referencing exhibits that were moved into the record).

10 years for aggravated indecent assault without consent.[3]  Sentencing Order, 1/6/20, 1-3.[4]  Appellant timely filed a motion for reconsideration of sentence that was denied by operation of law.  This timely appeal followed.[5]

Appellant presents the following issues for our review:

> 1.    Was not the evidence insufficient beyond a reasonable doubt to prove that Appellant committed the crimes of rape by forcible compulsion, aggravated indecent assault by forcible compulsion, and indecent assault by forcible compulsion, where the evidence was insufficient to prove Appellant employed forcible compulsion against the complainant in committing those crimes?

---

[3] With the exception of sexual assault which merged for sentencing purposes, the court imposed no further penalty for the remaining convictions.

[4] The notes of testimony from the sentencing hearing were not originally included in the certified record.  We brought that to the attention of the parties in an order responding to the parties' applications seeking to strike the other party's brief.  At this Court's direction, Appellant filed an application to correct the omission in the record.  We hereby grant Appellant's application pursuant to Pa.R.A.P. 1926.

[5] Appellant requested an extension of time for his initial deadline for filing an ordered statement pursuant to Pa.R.A.P. 1925(b) as he awaited receipt of the notes of testimony from his sentencing hearing.  The trial court never ruled on the request but implicitly granted it by issuing an opinion responding to the claims included in the statement Appellant later filed.  Pa.R.A.P. 1925(b)(ii). Accordingly, we deem that Appellant and the trial court have complied with Rule 1925.  *Cf. Commonwealth v. Burton,* 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (concluding that remand was not necessary where the trial court filed an opinion addressing the issue presented in Burton's untimely Rule 1925(b) statement).

This Court previously granted Appellant's application to strike the Commonwealth's untimely brief and the Commonwealth's application to strike Appellant's brief due to his use of an unredacted reference to the minor victim's name.  With leave of court, Appellant has filed a substituted brief.

2.     Was not the evidence insufficient beyond a reasonable doubt to prove that Appellant committed the crimes of rape with threat of forcible compulsion, IDSI with threat of forcible compulsion, aggravated indecent assault with the threat of forcible compulsion, and indecent assault with threat of forcible compulsion, where the evidence was insufficient to prove Appellant made any threats of forcible compulsion against the complainant in committing those crimes?

3.     Did not the trial court abuse her discretion and violate the Sentencing Code by imposing a manifestly excessive and unreasonable sentence of 15 to 30 years, three times what the Commonwealth requested, where the court upwardly departed from the guidelines without stating adequate reasons on the record?

Appellant's Brief at 4 (references to answers of the lower court omitted).

In his first two issues, Appellant challenges the sufficiency of the evidence supporting his convictions for rape, IDSI, aggravated indecent assault, and indecent assault that were predicated on the Commonwealth proving, beyond a reasonable doubt, that he committed those offenses by forcible compulsion and threat of forcible compulsion.   For purposes of these claims, the Crimes Code defines "forcible compulsion" as "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied."   18 Pa.C.S. § 3101; *see also Commonwealth v. Eckrote*, 12 A.3d 383, 387 (Pa. Super. 2010) ("[O]ur Supreme Court stated that forcible compulsion includes 'not only physical force or violence, but also moral, psychological or intellectual force used to compel a person to engage in sexual intercourse against that person's will.'") (citation omitted).

A challenge to the sufficiency of the evidence requires consideration of our well-established standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ventura*, 975 A.2d 1128, 1142 (Pa. Super. 2009) (citation omitted). In Pennsylvania, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018); *see also* 18 Pa.C.S. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under [the Sexual Offenses] chapter.").

Appellant does not contest that he engaged in sexual relations with I.C. Instead, he alleges that his crimes were overcharged and the evidence failed to prove that he forcibly compelled I.C. or threatened her with forcible compulsion to get her to submit to his sexual acts. Appellant's Brief at 20-21,

24-27, 34-35. The Court cannot agree with his assessment of the record. Upon viewing the trial testimony in the light most favorable to the Commonwealth as the verdict winner – as dictated by the standard of review – the Court finds that the evidence proved that defendant used forcible compulsion and threats of forcible compulsion to compel I.C. to engage in numerous criminal sex acts with him over a two-year span.

This Court has explained that,

A determination of forcible compulsion rests on the totality of the circumstances, including but not limited to this list of factors:

the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have been taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 721 (Pa. Super. 2015) (added emphasis removed), *citing Commonwealth v. Rhodes*, 510 A.2d 1217, 1226 (Pa. 1986).

When forcible compulsion (used or[ ]threatened) consists of moral, phychological [sic] or intellectual force, the force may be less tangible but is not less susceptible of proof, and the critical circumstances and evidence here will be those which tend to prove or disprove compulsion or lack of consent, *i.e.* that such force was used to compel a person to engage in sexual intercourse against that person's will.

*Rhodes*, 510 A.2d at 1227 (internal quotation marks and footnote omitted).

In **Rhodes**, a twenty-year old man lured an eight-year-old neighbor, whom he had known for several years, into an abandoned building and proceeded to engage in sexual acts with her. In finding sufficient evidence of forcible compulsion and threats of forcible compulsion, the **Rhodes** court reasoned:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence.

**Rhodes**, 510 A.2d at 1227.[6]

In the instant case, there was almost a twelve-year age difference between Appellant and I.C. Appellant engaged in repeated vaginal and oral intercourse, and one instance of attempted anal intercourse, with I.C. while

---

[6] This Court previously noted that "[t]he **Rhodes** court's inclusion of types of forcible compulsion other than physical was a significant change in the law." **Commonwealth v. Fischer**, 721 A.2d 1111, 1115 (Pa. Super. 1998). Within a year of a subsequent decision in **Commonwealth v. Berkowitz**, 641 A.2d 1161, 1165 (Pa. 1994), in which the Supreme Court stated that the legislature intended the term forcible compulsion to mean "something more than a lack of consent," the legislature added a definition for forcible compulsion to 18 Pa.C.S. § 3101, that used the language used by the **Rhodes** court, including a reference to "moral, emotional or psychological force." **See Fischer**, 721 A.2d at 1116-17 (discussing the development of the definition for "forcible compulsion").

- 8 -

he was between the ages of twenty-four and twenty-six and she was between the ages of thirteen and fifteen. N.T. Trial, 10/31/19, at 9, 47, 110 (referencing their dates of births). This is a case where Appellant actively lowered the victim's resistance by piquing her interest in sexual activity by giving the minor victim the impression that she was in a romantic relationship with her considerably older, adult cousin. *Id.* at 25-26, 71-72, 85-86, 98. While she admittedly said nothing because she was scared during the first incident of vaginal intercourse, *id.* at 21, 39, she told him no or that she did not want to do it "[a] couple times" and he would not listen to her and proceeded, in any event, to engage in intercourse with her. *Id.* at 39-40 (I.C.: "He wouldn't listen to me. I mean, it still get done so there was no listening there."); *see also id.* at 95 (I.C.'s sister testifying that I.C. told her about an incident "in the living room [where] he bent her over [and] stuck his thing in there and she had said no and she was uncomfortable with it, but he continued").

To ensure his victim's continued submission to his abuse and avoid anyone from discovering his course of conduct with her, Appellant told I.C. that, if she told someone about what was going on, she would "get in trouble" and it would be "bad." N.T. Trial, 10/31/19, at 42-43, 78. Those statements made I.C. feel "scared" and, as a result, she did not "want to make him mad." *Id.* I.C. also acknowledged threats from Appellant that, if she told anyone, "[h]e was going to leave [her] somewhere far so no one could find [her]" and

that she "was going to die" or that he would kill her. *Id.* at 79-80, 84-85.[7] The combination of these threats contributed to I.C. submitting to the sexual acts directed by Appellant. *See, e.g.,* id. at 40-41 (I.C.: "I mean, I mean, sometimes he would, like, yeah. You got to hold it [referring to his penis] … Like, because, I would hold it. I didn't want to get in trouble so I did what I was told."); *id.* at 85 (I.C.: "So it was, like, to scare me into just shutting up. I just, like, kept my mouth shut anyway, but it was just, like to reassure that I was going to keep my mouth shut.").

The evidence of Appellant's grooming of his minor cousin as a romantic partner combined with his use of threats to the victim if she told anyone about them presented a case of emotional, moral, psychological, or intellectual compulsion that has often been found in circumstances involving a young, vulnerable victim and a perpetrator who is in a position of authority and trust. This emotional and psychological coercion constituted forcible compulsion and the warnings of trouble, abandonment, and death constituted threats of forcible compulsion. *See, e.g., Commonwealth v. Ables*, 590 A.2d 334,

---

[7] Appellant fails to properly review the evidence under the standard of the review when he asserts that "I.C. never testified to any specific threats [he] made." Appellant's Brief, at 34. When pressed on her testimony that Appellant told her that she would be in trouble if she told anyone about them, I.C. addressed specific threats made by Appellant. *See* N.T. Trial, 10/31/19, 80 ("Q. What did **he say** the very first time it happened allegedly? A. I was going to die…") (emphasis added); *id.* at 85 (A. "**He said that** at some point. He was like, I'm gonna leave you, I'm gonna take you somewhere, I'm gonna leave you there by yourself.") (emphasis added); *id.* ("Q. So when you were also asked if he said if you tell someone I'll kill you, were you making that one up? A. Mm-mm. **He said that**, like I was a lot younger.") (emphasis added).

338 (Pa. Super. 1991) (finding sufficient evidence for forcible compulsion by emotional exploitation where Ables repeatedly victimized his 13-year-old niece and told her if she told anyone she would get into trouble); *Commonwealth v. Frank*, 577 A.2d 609, 619 (Pa. Super. 1990) (evidence sufficient to prove that victim submitted to sexual intercourse under forcible compulsion or threat of forcible compulsion where the adolescent victim, undergoing therapy, submitted to sexual intercourse with his therapist out of fear that the therapist would ruin his chances for adoption or would hurt someone the victim cared about); *see also Commonwealth v. Gabrielson*, 536 A.2d 401, 407 (Pa. Super. 1988) ("In a case where, as here, a victim is threatened with physical abuse if she refuses to engage in intercourse with the assailant even to the point where the victim considers it pointless to resist, we have held that such conduct demonstrates the use of force and threat of force sufficiently compelling to meet the statutory threshold of forcible compulsion.").

Under the circumstances presented here, we agree with the trial court that the evidence was sufficient to prove that defendant committed his offenses by psychological and emotional forcible compulsion and threats of forcible compulsion. We find the significant age difference between Appellant and the victim, I.C.'s stated fears preyed on by Appellant's threats, along with Appellant's status as the victim's older cousin and his efforts to craft a supposed romantic relationship with the victim provided Appellant with the opportunity and authority needed to compel I.C. to submit to his will. The

combined evidence sustained Appellant's convictions. ***Accord Commonwealth v. Dorman***, 547 A.2d 757, 761-62 (Pa. Super. 1988) (evidence sufficient for forcible compulsion where 38-year-old Dorman had intercourse with his 13-year-old niece; location of the crime in a remote wooded area where Dorman drove the victim, the victim's protest of "don't," Dorman's disrobing of the victim, and Dorman's position as the victim's uncle was sufficient evidence, notwithstanding the victim's lack of more "strenuous resistance").

Appellant's remaining issues present challenges to the legality and discretionary aspects of his sentence. With respect to the former issue, Appellant claims that his convictions for rape, aggravated indecent assault, and indecent assault involving both forcible compulsion and threat of forcible compulsion should have merged for sentencing purposes. Appellant's Brief at 27 n.36. Even though this claim was raised for the first time in Appellant's statement of issues presented pursuant to Pa.R.A.P. 1925(b), we can review this claim since inquiry into the legality of a sentence is a non-waivable matter when this Court is properly vested with jurisdiction. ***Commonwealth v. Wolfe***, 140 A.3d 651, 660 (Pa. 2016) ("legality-of-sentence claims are not subject to the traditional waiver doctrine."); ***see also Commonwealth v. Tanner***, 61 A.3d 1043, 1046 (Pa. Super. 2013) (whether crimes merge for sentencing purposes implicates the legality of sentence, which this Court can raise *sua sponte*); ***Commonwealth v. Borovichka***, 18 A.3d 1242, 1254 n.8 (Pa. Super. 2011) (stating, "[a] challenge to the legality of a sentence … may

be entertained as long as the reviewing court has jurisdiction"). Our standard of review for a legality of sentence claim is *de novo* and our scope of review is plenary. ***Tanner***, 61 A.3d at 1046.

Merger of sentences is governed generally by Section 9765 of the Sentencing Code, which provides:

> **§ 9765. Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "The preliminary consideration is whether the facts on which both offenses are charged constitute one solitary criminal act. If the offenses stem from two different criminal acts, merger analysis is not required." ***Commonwealth v. Healey***, 836 A.2d 156, 157-58 (Pa. Super. 2003) (citation omitted); ***see also Commonwealth v. Robinson***, 931 A.2d 15, 25 (Pa. Super. 2007) (*en banc*) (the focus on differentiating between single and multiple criminal acts for merger claims "is designed to prevent defendants from receiving a 'volume discount on crime'") (citation omitted).

Here, Appellant's merger argument fails because he committed different acts to establish each of the elements of rape, aggravated indecent assault, and indecent assault involving both forcible compulsion and threat of forcible compulsion. His charging documents informed him that the rape charges concerned sexual intercourse with the victim, the aggravated indecent assault

charges concerned penetration, however, slight of the victim's genitals or anus, and the indecent assault charges concerned either the victim having indecent contact with Appellant or the victim having contact with seminal fluid, urine, or feces. Bills of Information, 4/26/19. For all of those charges, the range of dates for the offenses was listed as "January 1, 2015 to December 22, 2018." *Id.* As explained above, defendant employed different forms of forcible compulsion and threats of forcible compulsion to engage in intercourse with the victim.

Moreover, the trial evidence demonstrated that Appellant had vaginal intercourse with the victim for "[l]ike a year," starting when she was 13, and then he proceeded to engage in oral intercourse with her at age 14, until the abuse ended with an incident of vaginal intercourse and attempted anal intercourse on December 22, 2018. N.T. Trial, 10/31/19, at 20-26, 31-33. I.C. noted that that the vaginal intercourse happened in various rooms of Appellant's mother's home and the anal intercourse incident happened at her father's home. *Id.* at 26, 30. I.C. testified prior to trial that the acts of abuse happened at least twenty times, told the police "that it got to the point where it would happen four times a month," and testified at trial that it happened "really, really often." *Id.* at 72-73. Accordingly, under the facts presented, it is clear that Appellant's convictions were sustained by multiple criminal acts

and merger does not apply.[8]  **See, e.g., _Commonwealth v. Snyder_**, 870 A.2d 336, 349-50 (Pa. Super. 2005) (counts of rape and involuntary deviate sexual intercourse did not merge for sentencing purposes; the convictions were supported by separate facts, as there were at least five locations where a sexual encounter occurred, and more than four separate occasions which would support a conviction for both rape and involuntary deviate sexual intercourse and Snyder was charged with only two counts each of rape and IDSI); **_see also Commonwealth v. Belsar_**, 676 A.2d 632, 634 (Pa. 1996) ("When a criminal act has been committed, broken off, and then resumed, at least two crimes have occurred and sentences may be imposed for each.  To hold that multiple assaults constitute only one crime is to invite criminals like Belsar to brutalize their victims with impunity.")

Lastly, Appellant argues that the trial court abused its discretion by imposing an excessive aggregate sentence and failing to state adequate reasons for imposing a sentence for rape that departed upward from the recommendation of the Sentencing Guidelines.[9]  Appellant's Brief at 35-39.

_____

[8] We acknowledge that the trial court conceded in its opinion that the charges premised upon threats of forcible compulsion should have merged with the related charges premised upon forcible compulsion.  Trial Court Opinion, 4/1/21, at 11.  The trial court, however, never provided this Court with any analysis for that conclusion.

[9] For the offenses upon which the court imposed sentences, we note that the guidelines recommended minimum imprisonment terms of 48 to 66 months, plus or minus 12 months for aggravating or mitigating circumstances, for rape by forcible compulsion and IDSI of a person less than 16 years of age, and 22
_(Footnote Continued Next Page)_

He also claims that the court chose to "aggravate" his sentence because he declined to offer an allocution statement. *Id.* at 39-41.

There is no absolute right to appellate review of a discretionary sentencing claim. ***Commonwealth v. Solomon***, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*). Rather,

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Manivannan***, 186 A.3d 472, 489 (Pa. Super. 2018) (citation omitted). Following satisfaction of all four elements, this Court then reviews the underlying discretionary aspects of sentencing issue, pursuant to an abuse of discretion standard. ***Commonwealth v. Akhmedov***, 216 A.3d 307, 328-29 (Pa. Super. 2019) (*en banc*).

---

to 36 months, plus or minus 12 months for aggravating or mitigating circumstance, for aggravated indecent assault without consent. N.T. Sentencing Hearing, 1/6/20, 6 (noting the recommended ranges for rape by forcible compulsion and IDSI of a person less than 16 years of age and that Appellant had a prior record score of zero); 204 Pa. Code § 303.15 (Offense Listing; 7th Ed., Amend. 4); 204 Pa. Code § 303.16(a) (Basic Sentencing Matrix; 7th Ed., Amend. 4). The trial court imposed an above-the-guidelines maximum imprisonment term for rape by forcible compulsion, a consecutive standard guidelines-range sentence for IDSI of a person less than 16 years of age, and a concurrent above-the-guidelines maximum imprisonment term for aggravated indecent assault without consent. 18 Pa.C.S. § 1103 (providing the maximum imprisonment terms for felonies).

Here, we find no procedural impediment to substantive review. Appellant timely filed a notice of appeal within two days of his timely-filed post-sentence motion being denied by operation of law. Pa.R.Crim.P. 720(A)(2)(b). His claim was also preserved in his timely-filed post-sentence motion, in which he challenged both the length of his sentence and the adequacy of the court's statement of reasons for the sentence. Post-Sentence Motion, 1/16/20, ¶¶ 4-5 ("The sentence was unreasonable and manifestly excessive … Although Petitioner exercised his right to remain silent at sentencing, and no other witnesses testified, Your Honor cited as aggravating factors that Petitioner showed no remorse and that there was 'continued denial.' No evidence of either of these were presented at the sentencing hearing."). Lastly, Appellant included a statement required by Pa.R.A.P. 2119(f) in his brief and cited prior opinions establishing that his claim presents a substantial question for review. Appellant's Brief at 14-17, **citing**, *inter alia*, **Commonwealth v. Robinson**, 931 A.2d 15, 26 (Pa. Super. 2007) (*en banc*) (finding that Robinson's claim that a court imposed an unreasonable and excessive sentence, outside of the guidelines, without providing an adequate explanation raised a substantial question). We thus turn to the merits.

Our standard of review regarding challenges to the discretionary aspects of sentencing is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by error in judgment. Rather, the appellant must establish, by reference to the record, that the

- 17 -

> sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill[-]will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Moye*, 266 A.3d 666, 676-77 (Pa. Super. 2021) (citation omitted). This deferential standard is based on the recognition that "the nuances of sentencing decisions are difficult to gauge from the court transcript used upon appellate review." *Commonwealth v. Perry*, 32 A.3d 232, 236 (Pa. 2011), *quoting Commonwealth v. Walls*, 926 A.2d 957, 961-62 (Pa. 2007).

In reviewing a record to determine if the sentencing court abused its discretion, the Sentencing Code instructs this Court to consider the nature of the circumstances of the crime; the history and characteristics of the defendant; the sentencing court's findings as well as the court's opportunity to observe the defendant, including through presentence investigation; and the sentencing guidelines. *See* 42 Pa.C.S. § 9781(d).

The Sentencing Code additionally instructs sentencing courts to consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). "The balancing of these Section 9721(b) sentencing factors is within the sole province of the sentencing court." *Commonwealth v. Velez*, --- A.3d ----, 2022 WL 964170, *2 (Pa. Super., filed Mar. 31, 2022) (citation omitted).

The sentencing court must also consider the sentencing guidelines when sentencing a defendant. *See* 42 Pa.C.S. § 9721(b). "However, the sentencing

guidelines are purely advisory in nature – they are not mandatory." ***Velez***, --- A.3d ----, 2022 WL 964170, at *3 (citation omitted). A court may therefore, as an act of discretion, sentence defendants outside the guidelines' recommendations so long as their sentence does not exceed the maximum sentence allowed by statute. ***Id.*** When a court deviates from the Sentencing Guidelines, it must state the reasons for doing so on the record. ***Id.*** This Court shall vacate a sentence if it finds, *inter alia*, that the "sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S. § 9781(c)(3).

"Further, the weight accorded to the mitigating factors or aggravating factors presented to the sentencing court is within th[at] court's exclusive domain." ***Velez***, --- A.3d ----, 2022 WL 964170, at *3 (citation omitted). In ***Walls***, our Supreme Court "specifically admonished that … an appellate court could not substitute its own weighing of those factors." ***Commonwealth v. Bowen***, 975 A.2d 1120, 1123 (Pa. Super. 2009), ***citing Walls***, 926 A.2d at 966. When a court possesses a presentence investigation report, it is presumed that the court "was aware of the relevant information regarding defendant's character and weighted those considerations with mitigating statutory factors." ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Appellant initially argues that his sentence was excessive and unreasonable. Appellant's Brief at 35-36. Beyond pointing out that his rape sentence constituted an upward departure from the term recommended by the Sentencing Guidelines, he highlights that his aggregate sentence was

three times the sentence requested by the Commonwealth and he asked the trial court to consider mitigating factors including that he had no prior criminal record, he elected to waive his right to a jury trial, he had "a lot of family support," and an "extensive work history." ***Id.*** at 35-38. For multiple reasons, this Court cannot agree with his characterization of his sentence as excessive and unreasonable.

First, pursuant to ***Devers***, we cannot find that the court abused its discretion by not properly weighing his mitigating sentencing factors because the court had a presentence investigation report and thus is presumed to have been aware of the relevant information regarding his character and weighted those considerations along with the mitigating statutory factors. N.T. Sentencing Hearing, 1/6/20, 5 (trial court referencing its possession of the presentence investigation report); ***Devers***, 546 A.2d at 18; ***see also Commonwealth v. Horning***, 193 A.3d 411, 419 (Pa. Super. 2018).

Second, the comparison of the aggregate sentence with the sentences recommended by the Sentencing Guidelines and the Commonwealth do not establish an abuse of discretion as a matter of law. As an initial matter, the guidelines are only relevant for comparison with the minimum terms for each of the individual judgments of sentence, 204 Pa. Code § 303.9(e), and, as noted above, the guidelines are only advisory. Because the second part of Appellant's argument involves the trial court's reasons for departing from the guidelines for the rape sentence, we will defer the discussion of whether the court stated proper reasons for an upward departure *infra*. To the extent that

Appellant argues that the court abused its discretion by imposing a sentence in excess of what the Commonwealth requested, we note that the trial court was not cabined by the prosecution's recommendation. *See, e.g., Commonwealth v. Sexton*, 222 A.3d 405, 422 (Pa. Super. 2019) ("With regard to Appellant's assertion that the court erred in imposing a sentence which exceeded one recommended by the Commonwealth, the Commonwealth's recommendations, or lack thereof, are not binding on the trial court's exercise of discretion at sentencing.").

Third, the Court cannot agree with Appellant because he fails to review his aggregate sentence in the context of the totality of the circumstances in his case. The sentence is unquestionably high: it contains a maximum imprisonment term, plus a consecutive standard-guidelines-range prison term. If the same sentence had been imposed on a defendant with no prior criminal record and the charges in question arose from a single criminal incident, this Court would be inclined to agree with his characterization of the sentence as excessive. The trial court, however, appears to have acted within its discretion by imposing this sentence because the crimes in this case occurred during a continuing campaign of sexual abuse of a minor victim over a two-year span which involved, at a minimum, twenty instances of abuse and, at times, happened on a weekly basis. N.T. Trial, 10/31/19, at 72-73. Additionally, the court's opinion suggests that it chose the term because it was consistent with the gravity of the offenses as they related to the impact on the life of the victim:

> The court's observations showed that Appellant did this to a vulnerable child who had no way of consenting to or understanding what was being done to her and who has been left to live with their trauma ever since. Appellant egregiously exploited the child's trust in him to commit criminal acts against her.

Trial Court's Opinion, 4/1/21, 11.

Where Appellant, as a 24 to 26-year-old, committed at least twenty acts of sexual abuse involving intercourse with his 13 to 15-year-old cousin, and used a combination of romantic grooming and specific threats to accomplish those crimes, the Court cannot agree that the trial court imposed an excessive term by imposing two consecutive terms of imprisonment, one of which included a maximum imprisonment term. *See Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011) (holding that a sentence of 633 to 1,500 years' imprisonment for 314 offenses, including multiple counts of rape, involuntary deviate sexual intercourse, and indecent assault, was not excessive; Prisk was convicted of sexually abusing his step-daughter between 2001 and 2007, starting when his victim was 10 years old, and his offenses occurred on an almost daily basis; noting that Prisk was not entitled to a "volume discount" for multiple offenses); *see also Commonwealth v. Davis*, 241 A.3d 1160, 1182 (Pa. Super. 2020) (finding no abuse of discretion for the imposition of four consecutive robbery sentences where Davis committed robberies of five people during a single armed home invasion incident; noting agreement with the trial court that Davis was not entitled to

a "volume discount" by having all of his sentences run concurrently); **Commonwealth v. P.L.S.**, 894 A.2d 120, 133 (Pa. Super. 2006) (effect of ongoing sexual abuse that occurred on a weekly basis for two years and that P.L.S.'s attempted effect to justify his actions on the basis that they were in retaliation against the victim's mother offered support for sentencing in excess of the recommendations of the Sentencing Guidelines).

In the remainder of his argument, Appellant asserts that the trial court failed to state adequate reasons for departing upwards from the recommendations of the Sentencing Guidelines for his convictions for rape by forcible compulsion and aggravated indecent assault without consent. Appellant's Brief, at 37-42. To deviate from the recommendations of the guidelines, "the sentencing court must demonstrate, on the record, its awareness of the sentencing guidelines and offer a contemporaneous written statement of the reason" for its deviation. **Commonwealth v. Wallace**, 244 A.3d 1261, 1279 (Pa. Super. 2021), **citing**, *inter alia*, 42 Pa.C.S. § 9721.

Here, the court was informed on the record by the prosecutor of the applicable guideline ranges for the lead offenses that formed the basis for Appellant's aggregate sentence. N.T. Sentencing Hearing, 1/6/20, 6. The court prefaced its imposition of the sentence by stating, "Then based upon the testimony presented in this hearing, taking into consideration the age of the child at the occurrence of the incident, the lack of remorse, the continued denial, I'm issuing the following sentence." **Id.** at 10-11.

Appellant's challenge to the adequacy of that statement of reasons is three-fold. He initially rejects the importance of the court's reference to the "testimony presented in this hearing" because no testimony was presented at the sentencing hearing. Appellant's Brief, at 38. He then alleges that the court's reference to "the age of the child" was a form of double-counting of sentencing factors already considered by the Sentencing Guidelines because there was an age-related element for his conviction for IDSI of a person less than 16 years of age. *Id.* at 38-39. He concludes by asserting that the stated reasons of "lack of remorse" and "continued denial" were references to the fact that he chose not to make an allocution statement, and were thus proof that the court improperly chose to deviate from the guidelines "based on [his] silence at sentencing." *Id.* at 39-41. These arguments are unavailing.

Brief as they are, the court's comments constituted an adequate statement of reasons for the departure from the guidelines.[10] Because the prosecution informed the court of the correct applicable guideline ranges for the lead offenses, and the court then exceeded the recommended range for the rape sentence after contemporaneously stating multiple grounds for departing from the guidelines' recommendation, we can discern from the

_____

[10] We remind the trial court, however, that "[i]t is better practice for the court to include in its statement of reasons for the sentence some reference to the guidelines specified in the Sentencing Code, with some explanation of how consideration of those guidelines affected the determination of sentence." *Commonwealth v. Franklin*, 446 A.2d 1313, 1317 (Pa. Super. 1982). At the same time, we should not hold a statement of reasons insufficient "when it is apparent that even though the court made no reference to the guidelines, it did consider and apply them." *Id.*

- 24 -

record before us that the sentencing court understood the applicable sentencing guideline ranges and that it was deviating from them, prior to fashioning Appellant's sentence.

We also find that the trial court offered multiple acceptable reasons for a deviation. To the extent that the court relied on the age of the victim as an aggravating sentencing factor, the consideration of that fact for purposes of Appellant's rape by forcible compulsion sentence did not result in double counting of factors already considered by the guidelines because the age of the victim was not an element of the offense at 18 Pa.C.S. § 3121(a)(1).[11] *See Commonwealth v. Gause*, 659 A.2d 1014, 1017 (Pa. Super. 1995) ("The rape statute applies to a victim of any age."). That the victim was only 13 years old when Appellant's abuse of her started was an acceptable sentencing factor for consideration of a deviation from the guidelines. *See Walls*, 926 A.2d at 967 (holding that the age of a victim, there seven, for the offenses of rape and IDSI of a person less than 13 years old was among the

_____

[11] The same is true for the above-guidelines sentence for aggravated indecent assault without consent under 18 Pa.C.S. § 3125(a)(1).

While Appellant treats the precise age of the victim as an element of IDSI of a person less than sixteen years of age for purposes of his double-counting factors argument, we would also point out that our Supreme Court has held otherwise concerning the treatment of a precise age as a sentencing factor. *See Walls*, 926 A.2d at 967 ("the fact that the victim was only seven-years-old at the time of the sexual abuse, was not an element of rape or IDSI of a victim less than thirteen years old and could justify an above-guidelines sentence"). That point is only instructive in this instance because the trial court did not deviate from the guidelines when it sentenced Appellant for IDSI of a person less than 16 years of age.

permissible factors for the court's imposition of maximum sentences in excess of the Sentencing Guidelines); ***Commonwealth v. Durazo***, 210 A.3d 316, 324 (Pa. Super. 2019) ("nothing prevents the court from considering the extreme age difference of the victim").

Lack of remorse was also another acceptable consideration for a deviation. ***See Commonwealth v. Begley***, 780 A.2d 605, 644 (Pa. 2001) (noting lack of remorse, as a sign of the defendant's character, is an appropriate consideration for sentencing outside of the guidelines); ***Commonwealth v. Summers***, 245 A.3d 686, 695 (Pa. Super. 2021) ("Lack of remorse is an appropriate sentencing consideration."). Nothing in the record supports Appellant's argument that the court's reference to a lack of remorse was a response to his decision not to offer an allocution statement or an infringement on his right to silence. The trial court explains in its opinion that the lack of remorse comment derived from the court's observation of Appellant's body language at trial and sentencing. Trial Court Opinion, 4/1/21, 11 ("Next, the trial court, with her 10+ years of jurisprudence, had the opportunity to observe the Appellant throughout the course of the trial and sentencing, and keenly observed a lack of remorse through Appellant's body language.").

Appellant does not address the court's discussion of his body language in its opinion. Even assuming that he did, we would necessarily defer to the trial court's finding in those respects, under the standard of review, because the intricacies of body language are not apparent from the cold record, and

thus it could not be meaningfully addressed by this Court. ***See Commonwealth v. Colon***, 102 A.3d 1033, 1043 (Pa. Super. 2014) (citation omitted) ("In determining whether a sentence is manifestly excessive, [we] must give great weight to the sentencing court's discretion, as he or she is in the best position to measure factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference.").

As for the court's reference to the "testimony presented in this hearing," we agree with Appellant that that reason on its face appears to be nonsensical because no testimony was ever elicited at the sentencing hearing. At the same time, however, we do not find that be an improper sentencing factor because the trial court's opinion suggests that the comment was actually an inartful reference to the trial testimony, and in particular, to the victim's testimony. ***See*** Trial Court Opinion, 4/1/21, 11 ("First, the trial court considered the victim's testimony and her reaction to the situation."). The court elaborated on this factor when it addressed its observations of the victim and Appellant's exploitation of the victim's trust in him. ***Id.*** The court's consideration of the significant trauma that Appellant caused the minor victim to suffer during the two-year campaign of abuse as an aggravating sentencing factor was not an abuse of discretion. ***See, e.g.,* Commonwealth Sheller**, 961 A.2d 187, 192 (Pa. Super. 2008) (among the proper reasons considered for an upward departure from the sentencing guidelines for a voluntary manslaughter sentence was trauma suffered by the victim's twelve-year-old

child caused by her discovery of her mother's body); ***Commonwealth v. Impellizzeri***, 661 A.2d 422, 433 (Pa. Super. 1995) (statement referring to, *inter alia*, that a rape victim experienced extreme emotional trauma satisfied the requirement for stating reasons on the record for exceeding the Sentencing Guideline's recommendation).

To the extent that the trial court cited "continued denial" in its statement of reasons for the sentence, the court does not address that reason in its opinion. We decline to find that the phrase was proof that the trial court imposed an upward departure sentence to punish defendant for the exercise of his constitutional rights, as in ***Commonwealth v. Bethea***, 379 A.2d 102 (Pa. 1977), because the court left the phrase so undefined that this Court cannot infer what the trial court was referring to as being denied. If the court had referred to a continued denial of guilt, where defendant exercised his rights to not incriminate himself or engage in allocution, we would have found merit to Appellant's claim pursuant to **Bethea**. Since the phrase used by the court was so vague that it conveyed no appreciable meaning, we decline to put additional words into the trial court's statement in order to find an error.

Even assuming that the utterance of "continued denial" was an improper sentencing factor, provided that it was not just another reference to the body language leading the court to infer a lack of remorse, we cannot conclude that the consideration of that reason resulted in an abuse of discretion because, as addressed above, the court considered other independently valid reasons for imposing a sentence departing upward from the recommendations of the

Sentencing Guidelines. ***See Commonwealth v. Smith***, 673 A.2d 893, 895-96 (Pa. 1996) (where departure sentence was justified by independently valid reasons, even though impermissible sentencing factor also was employed in support, sentence must be affirmed); ***see, e.g., P.L.S., supra***, 894 A.2d at 133 (holding, in the alternative, that even if a trial court improperly considered uncharged conduct as a sentencing factor, an upward departure sentence was not an abuse of discretion because the court offered significant other support for the sentence including that the "Appellant sexually abused his victim nearly weekly for two years" and "the effect of this ongoing sexual abuse was substantial and long-term").

Here, the sentence issued to Appellant, though substantial, was supported by an adequate statement of reasons by the court and was not an abuse of discretion.

Judgments of Sentence affirmed. Appellant's application to correct an omission in the record pursuant to Pa.R.A.P. 1926 granted.


*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Prothonotary*


*Date: 4/25/2022*